UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHAHRAM KETABCHI, <br><br>　　　　　　　Petitioner, <br><br>　　v. <br><br>UNITED STATES OF AMERICA, <br><br>　　　　　　　Respondent. | 22-CV-2323 (SHS) |
| UNITED STATES OF AMERICA, <br><br>　　v. <br><br>SHAHRAM KETABCHI, <br><br>　　　　　　　Defendant. | 17-CR-243 (SHS) <br><br> OPINION & ORDER |

SIDNEY H. STEIN, U.S. District Judge.

　　Shahram Ketabchi, also known as Steven Ketabchi, has moved pursuant to 28 U.S.C. § 2255 for the Court to vacate his convictions after a jury trial for conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The U.S. Court of Appeals for the Second Circuit affirmed the convictions in October 2020. Ketabchi now urges that, but for the ineffective assistance of his trial counsel, (i) he would not have been convicted at trial or that (ii) the Court would have acquitted him after trial pursuant Fed. R. Crim. P. 29.

　　The Court, having presided over the trial in October and November 2018, and having reviewed the fully briefed motion (ECF No. 671), which includes the government's opposition (ECF No. 679), Ketabchi's reply (ECF No. 684), and trial attorney Jacob Mitchell's declaration (Mitchell Decl., ECF No. 678), the Court denies Ketabchi's 28 U.S.C. § 2255 motion.

I. **Legal Standard**

　　28 U.S.C. § 2255 directs the Court to vacate, set aside, or correct a sentence if it finds that there has been "such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." Pursuant to *Strickland v. Washington*'s two-prong test for ineffective assistance of counsel, the petitioner must prove that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and a court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Cox v. Donnelly*, 387 F.3d 193, 198 (2d Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).

"In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255.). However, "that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" *Gonzalez*, 722 F.3d at 130–31 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 131.

## II. Evidence at Trial

The government's evidence against Shahram Ketabchi at trial was certainly substantial. *See* Trial Tr. 1883-1898 (government's summation discussing GX 515, 206(B), 234(F), 517, 450, 1011, 1017, 512, 441, 230, 711, 120, 1103, 1104, 1137, 1140, 246, 212, 213, 1012, 1013, 1018, 1014, 222-225, 243, and 218). As summarized in the government's opposition memorandum,

> [P]roof of the [Shahram Ketabchi's] participation in the wire fraud conspiracy and the money laundering conspiracy included testimony from ten witnesses, including a cooperating witness, four victims of the telemarketing scheme, the son of a fifth victim of the scheme, three law enforcement agents and employees, and an employee of the Internal Revenue Service ("IRS"). The Government introduced more than 300 exhibits, including emails and text messages that the defendant exchanged with his co-conspirator (and brother), Arash Ketabchi ("Arash"); written complaints of fraud lodged by victims, which were recovered from the defendant's residence and electronic devices; letters containing false statements drafted and sent by the defendant to credit card companies to oppose refunds being granted to victims; records of sales made to victims of the scheme; bank and credit card records showing payments by victims to the telemarketing companies operated in furtherance of the scheme; financial records reflecting the defendant's transactions of the proceeds of the telemarketing scheme; and telemarketing scripts.

Gov't Opp'n, at 3-4. For instance, the government introduced the GX 515 contract for one of the victims prepared by the defendant. (Trial Tr. 1883.) The government elsewhere cited documents Shahram Ketabchi "collected and tracked and prepared for

the purposes of disputing the charge-back." (Trial Tr. 1887). In addition, the government persuasively argued based on the admitted evidence that Shahram Ketabchi "knew that the customers had been duped when they gave A1 their money," in part, through evidence that he received the chargeback complaints from defrauded victims. (Trial Tr. 1869, 1887.)

## III. Counsel Was Not Ineffective for Failing to Adduce Evidence Regarding Ketabchi's Personality Disorder

First, the Court rejects defendant's claim that trial counsel was ineffective for "failing to investigate and adduce evidence as to [defendant's] personality disorder, which affected [his] *mens rea*." (Def.'s Mot., at 26.) The Court credits the declaration of Jacob Mitchell—co-counsel at trial with the late Kenneth Paul—that the defense lawyers were "aware of Mr. Ketabchi's mental health issues at the time of his trial [and] . . . made a carefully considered strategic decision not to seek to present any evidence to the jury regarding Mr. Ketabchi's mental health issues." (Mitchell Decl., at 2.) Although Ketabchi would want an expert to have been proffered by trial counsel, an expert's testimony would likely not have been admissible since such evidence would have "constituted an impermissible opinion about the 'ultimate issue' of whether [the defendant] possessed the mental state constituting an element of" the charged crimes. *United States v. Dupre*, 462 F.3d 131, 138 (2d Cir. 2006). *See also Cromitie v. United States*, No. 15 Civ. 8046 (CM), 2017 WL 1383982, at *6 (S.D.N.Y. Apr. 7, 2017). Certainly, trial counsel's choice not to present expert testimony was a permissible strategic decision.

The Court further concurs with Mitchell's analysis that "evidence of Mr. Ketabchi's diagnosis, assuming it was deemed admissible" would not have had "any effect on the jury's verdict." (*Id.*) Thus, even if the Court were to find that counsel was ineffective for not presenting evidence of defendant's alleged personality disorder to the jury, the Court could not find that the defendant suffered prejudice necessary for relief under *Strickland v. Washington*, 466 U.S. 668 (1984).

## IV. Counsel Was Not Ineffective for Failing to Adduce Evidence Regarding Ketabchi's Limited Role with the Chargebacks

Second, the Court rejects defendant's claim that counsel was ineffective for "failing to investigate and adduce evidence of [defendant's] limited role in charge backs." (Def.'s Mot., at 31.) This Court presided over the trial, was aware that Kenneth Paul was a seasoned, respected, and effective criminal defense lawyer, and now credits Mitchell's declaration that trial counsel "had a comprehensive understanding of both Mr. Ketabchi's views regarding his role in the offense conduct" and "made reasonable and diligent efforts to undertake [their] own investigation of Mr. Ketabchi's role."(Mitchell Decl., at 2.) There was extensive evidence at trial concerning Ketabchi's

3

role. Whether it was limited or not is in the eye of the beholder, but trial counsel certainly argued to the jury that it was indeed limited. *See, e.g.*, Trial Tr. 1966 (Mr. Paul's summation citing evidence of Shahram Ketabchi's limited role.)

Moreover, the Court credits Mitchell's declaration that the defense made a "considered strategic decision" to call Michael Finocchiaro as a witness because Finocchiaro could "permit, among other things, arguments to the jury distinguishing Mr. Ketabchi's conduct and knowledge from someone in Mr. Finocchiaro's position." (Mitchell Decl., at 2.) Finocchiaro was more actively involved in the fraud than Ketabchi and defense counsel followed through on their strategy as evinced by this portion of Mr. Paul's summation:

> I called Michael Finocchiaro. And why did I call him as my witness? I thought it important that you hear from him and hear what role, if any, Steven Ketabchi played in any of this so-called scheme. As he and Bill Sinclair both testified, it was not much of a role at all, if any. You heard from Michael Finocchiaro that Steven Ketabchi's role was exactly as Steven Ketabchi himself told you in his testimony. . . . He was equivalent to a low-level clerk.

(Trial Tr. 1966.)

Certainly, the Court agrees with Mitchell's determination that neither "'depicting' Mr. Ketabchi before the jury in a different way" nor "declining to call Mr. Finocchiaro to testify would have had any effect on the jury's verdict." (Mitchell Decl., at 3.) Thus, any error would not have been prejudicial. *See Strickland*, 466 U.S. 668.

## V. Counsel Was Not Ineffective for Failing to Rebut the Prosecution Narratives

Third, the Court rejects defendant's claim that counsel was ineffective for "failing to investigate and adduce evidence to refute false and harmful prosecution narratives." (Def.'s Mot., at 32.) The Court credits Mitchell's declaration that "Mr. Paul interviewed Mr. Ketabchi extensively in advance of trial" and also finds that, as noted by Mitchell, the defendant testified and was able to communicate to the jury that he spent considerable time working on his vitamin company and driving for Uber. *See* Mitchell Decl., at 3-4; *see, e.g.*, Trial Tr., at 1525. 1531, 1601-02, ECF No. 344.

In addition, the Court finds that defense counsel made a considered strategic decision to call witnesses for the defense as part of counsel's effort to rebut the prosecution narrative. For instance, defense counsel made a considered judgment to call defendant's sister Mona as a witness, yet forgo questioning her regarding a photograph (GX 714) that shows the defendant, Mona, and co-conspirator Ryan Hult together. The Court credits Mitchell's declaration that counsel did not "question Mona regarding the photograph during her direct examination in order to avoid highlighting that evidence for the jury" and finds that such a determination was reasonable. (Mitchell Decl., at 3.)

4

During his summation, Mr. Paul directly sought to undermine the government's theory: "[A]s Steven Ketabchi testified himself, he was never privy to anything that took place between the salespeople and the customers and therefore was not aware as to what was specifically agreed to and what was provided beyond what the fulfillment people gave him." (Trial Tr. 1964.)

There is no evidence that trial counsel erred in its defense strategy, but even if the defense strategy were in error and counsel should instead have made the strategic decisions favored by defendant in his motion, see Def.'s Mot., at 32-34, the Court concludes that any such putative error was harmless, as the jury would almost certainly have still returned guilty verdicts.

## VI. Failure to File or Seek Extension to File a Renewed Fed. R. Crim. P. 29 Motion or a Rule 33 Motion

Last, the Court rejects defendant's claim that counsel was ineffective for failing to renew its Fed. R. Crim. P. 29 motion after the verdict or failing to seek extensions for filing a renewed Rule 29 motion or a Rule 33 motion beyond the thirty days requested at the conclusion of trial. (Def.'s Mot., at 34.)

The record reflects that after the government rested, Mr. Paul moved for a judgment of acquittal on both counts pursuant to Rule 29. The Court denied the motion after "[h]aving had a full airing of the issues" and having presided over the trial. (Trial Tr. 1210.) At the conclusion of trial, Mr. Paul sought an extension of time to file a renewed Rule 29 motion and a Rule 33 motion and the Court set the deadline at 30 days from the end of trial. (Trial Tr. 2115.)

The Court credits Mitchell's declaration that he and co-counsel "made a considered decision not to file motions pursuant to Rules 29 or 33 . . . because we could identify no potentially meritorious ground for such a motion." (Mitchell Decl., at 4.) The Court further concurs with Mitchell's conclusion that no district or appellate court would have found the evidence of guilt insufficient (Id.), and thus finds that Ketabchi suffered no prejudice from his trial counsel's decision to neither file nor seek extensions to file a renewed Rule 29 motion or a Rule 33 motion.

## VII.     Conclusion

Shahram Ketabchi disagrees with a number of decisions made by his trial counsel. However, those decisions were strategic decisions made by experienced counsel and were well within an objective standard of reasonableness; in addition, there is no reasonable probability that had counsel made instead the strategic choices Ketabchi now advocates that "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).

Accordingly, Ketabchi's section 2255 motion is denied. Because "the motion and the files and records of the case conclusively show that the [defendant] is entitled to no relief," the Court concludes that no hearing on Ketabchi's motion is necessary. 28 U.S.C. § 2255(b).

Because Ketabchi has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2); *see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000). In addition, the Court certifies that any appeal from the order of this Court would not be in good faith. *See Coppedge v. United States*, 369 U.S. 438, 445–46 (1962).

Dated: New York, New York
       July 14, 2022

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.